UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 24-cv-60296-ALTMAN

**HERMAN FARRELL**,

*Petitioner*,

v.

**STATE OF FLORIDA**,

*Respondent.*
_____/

## ORDER

The Petitioner, Herman Farrell, is serving a life sentence after having been convicted of second-degree murder. *See* Petition [ECF No. 1] at 1. Farrell has filed a petition for writ of habeas corpus under 28 U.S.C. § 2254, arguing that his conviction is unconstitutional because the state trial court failed to hold a "Stand Your Ground" immunity hearing that applied the correct burden of proof. *See id.* at 4–6. After careful review, we **DENY** the Petition.

### THE FACTS

The State of Florida charged Farrell by information with one count of first-degree murder (Count 1) and three counts of aggravated assault with a deadly weapon (Counts 2–4). *See* Information [ECF No. 11-1] at 13–15. On August 25, 2016, Farrell's defense attorney filed an "Amended Motion for Pre-Trial Stand Your Ground Evidentiary Hearing." *See* Stand Your Ground Motion [ECF No. 11-1] at 28–37. In that motion, Farrell argued that he was immune from prosecution under FLA. STAT. § 776.032 (known colloquially as Florida's "Stand Your Ground" law) because Farrell knew the victim

"had a history of violence and had recently shot and killed a man," "was using Flakka," "was in possession of a firearm," and had just threatened to "blow [Farrell's] fucking head off." *Id.* at 31.[1]

The state trial court held the "Stand Your Ground" immunity hearing over three days—February 10, 2017, April 3, 2017, and April 28, 2017. *See* Stand Your Ground Hr'g Tr. [ECF No. 12-1] at 1–283. On August 24, 2017, the state trial court denied Farrell's Stand Your Ground Motion. *See* Order Denying Stand Your Ground Motion [ECF No. 11-1] at 39–49. The state court first found that Farrell had the burden to show "by a preponderance of the evidence that [Stand Your Ground] immunity attached." *Id.* at 40 (quoting *Dennis v. State*, 51 So. 3d 456, 460 (Fla. 2010)). Although the state court recognized that the Florida Legislature had amended FLA. STAT. § 776.032 only months earlier to shift the burden of proof to the State, it concluded that the amendment was "not retroactive and is therefore inapplicable to cases involving offenses committed prior to the effective date of the amendment." *Id.* at 41. Next, the court considered the evidence presented at the hearing and found that Farrell had failed to show "that he possessed a reasonable belief that his actions in discharging his firearm were necessary to defend himself against [the victim]." *Id.* at 48. The state court specifically determined that Farrell's testimony during the hearing was "not credible and [was] contradicted by other eyewitness testimony and physical evidence." *Id.* at 47. Finally, the state judge noted that—even if the new legal standard applied—he would have denied Farrell's Stand Your Ground Motion because the State had proven "by clear and convincing evidence that [Farrell] was not in reasonable fear of death or great bodily harm when he used deadly force against [the victim]." *Id.* at 49.

On September 25, 2017, Farrell's counsel filed a "Petition for Writ of Prohibition" in the Fourth DCA. *See* Petition for Writ of Prohibition [ECF No. 11-1] at 54–62. Farrell asked the Fourth

---

[1] Under Florida law, a person "is justified in using or threatening to use deadly force" if, as relevant to this case, "he or she reasonably believes that using or threatening to use such force is necessary to prevent imminent death or great bodily harm to himself or herself or another[.]" FLA. STAT. § 776.012(1). A person who justifiably uses deadly force is "immune from criminal prosecution and civil action[.]" *Id.* § 776.032(1).

2

DCA to prohibit the trial court "from exercising jurisdiction over further proceedings" because it had erred in denying the Stand Your Ground Motion. *Id.* at 57–58. Farrell argued that the state trial court had to apply the "clear and convincing" standard during the Stand Your Ground hearing and that the court's failure to apply the correct standard "forced" Farrell to testify to his detriment. *Id.* at 60. The Fourth DCA summarily denied Farrell's petition on October 12, 2017. *See* Order Denying Petition for Writ of Prohibition [ECF No. 11-1] at 64.

On January 30, 2018, a Broward County jury found Farrell guilty of first-degree murder. *See* First Trial Verdict [ECF No. 11-1] at 66–67.[2] Defense counsel promptly moved for a new trial under FLA. R. CRIM. P. 3.600, claiming that the trial court erred by "excluding from evidence the Defendant's trial testimony regarding specific acts of violence by the victim" and that it had denied Farrell the "right to fully cross examine and confront the witnesses against him[.]" First Motion for New Trial [ECF No. 11-1] at 79. The state trial court summarily denied the motion for new trial, *see* Order Denying First Motion for New Trial, [ECF No. 11-1] at 81, and then sentenced Farrell to life in prison, *see* First Judgment and Sentence [ECF No. 11-1] at 69–73.

In his direct appeal to the Fourth DCA, Farrell raised five issues: (1) that "the trial court reversibly erred when it improperly instructed the jury on justifiable use of deadly force"; (2) that the State had "made numerous improper comments during closing argument"; (3) that the trial court erred by refusing to "allow Mr. Farrell to cross-examine the state's witnesses about the victim's prior bad acts of violence towards them"; (4) that the trial court failed to grant a motion for mistrial "after the state's repeated questions about Mr. Farrell being a drug dealer"; and (5) that trial counsel "rendered ineffective assistance of counsel." First Direct Appeal Initial Brief [ECF No. 11-1] at 115–17. On May 29, 2019, the Fourth DCA found that the state trial court had indeed erred by excluding the "victim's

---

[2] The State *nolle prossed* the three aggravated-assault-with-a-deadly-weapon counts on February 6, 2018. *See* State Trial Court Docket [ECF No. 11-1] at 2.

3

prior bad act of beating up [State witness Nicole Bazini]" and reversed and remanded for a new trial. *Farrell v. State*, 273 So. 3d 43, 47 (Fla. 4th DCA 2019).

On remand, Farrell filed both a motion to dismiss and a motion for a new Stand Your Ground immunity hearing, arguing (again) that he had been justified in using deadly force because he'd feared that the victim would kill him. *See* Motion to Dismiss [ECF No. 11-1] at 224–26; Second Motion for Stand Your Ground Hearing [ECF No. 11-1] at 237–46. The state trial court denied both motions, reasoning that the evidence did not support Stand Your Ground immunity and that the Florida Supreme Court's decision in *Love v. State*, 286 So. 3d 177 (Fla. 2019),[3] did not require a new Stand Your Ground hearing. *See* Orders Denying Motion to Dismiss [ECF No. 11-1] at 250 ("The Defendant's case was remanded for a new trial, the [Stand Your Ground Motion] was previously heard and the subject of an ordered entered by the Court on August 24, 2017. *Love v. State*, decided on December 19, 2019, is not applicable.").

Trying to stop the prosecution from proceeding, Farrell filed a *pro se* petition for writ of prohibition with the Fourth DCA, but the appellate court dismissed that petition because Farrell was "represented by counsel." Order Dismissing Petition for Writ of Prohibition [ECF No. 11-1] at 258. Farrell's defense attorney then filed a petition for writ of certiorari with the Fourth DCA, arguing that the trial court should have conducted a new Stand Your Ground hearing under the new standard. *See* Petition for Writ of Certiorari [ECF No. 11-1] at 266 ("As Farrell's case was reversed on appeal, a new Stand Your Ground hearing is required by law[.]"). The Fourth DCA denied that petition, echoing the state trial court's reasoning that *Love* did not require a new immunity hearing. *See* Order Denying Petition for Writ of Certiorari [ECF No. 11-1] at 273 ("[T]he legislation itself is devoid of any suggestion that the Legislature intended section 776.032(4) to undo pre-effective date immunity hearings." (quoting *Love*, 286 So. 3d at 188)).

---

[3] We'll discuss *Love*'s holding later in this Order.

4

On March 12, 2020, a second Broward County jury found Farrell guilty of second-degree murder, a lesser-included offense of Count 1. *See* Second Trial Verdict [ECF No. 11-1] at 275. After this second verdict, Farrell filed a *pro se* petition for a writ of habeas corpus with the Fourth DCA, maintaining that the trial court erred by refusing to conduct a second Stand Your Ground hearing before his second trial. *See* Petition for Writ of Habeas Corpus [ECF No. 11-1] at 284. But the Fourth DCA summarily dismissed the petition because Farrell was still represented by counsel. *See* Order Dismissing Petition for Writ of Habeas Corpus [ECF No. 11-1] at 296. Meanwhile, Farrell's counsel filed a motion for a new trial, arguing that the trial court had made several different errors (including, as relevant here, by failing to grant Farrell Stand Your Ground immunity). *See* Second Motion for New Trial [ECF No. 11-2] at 2–6. The state trial court summarily denied that motion, *see* Order Denying Second Motion for New Trial [ECF No. 11-2] at 8, and again sentenced Farrell to life in prison, *see* Second Judgment and Sentence [ECF No. 11-2] at 10–14.

Farrell appealed again to the Fourth DCA and, this time, advanced six arguments: (1) that the trial court erred by allowing the State to "repeatedly argue in closing that Minott was an incredible witness because he asserted his Fifth Amendment right against self-incrimination"; (2) that the trial court erred by again restricting Farrell's ability to discuss the victim's "prior specific act of beating up and pointing a gun at Nicole Bazini"; (3) that the trial court erred by allowing the State to play a video showing Farrell "in jail clothes and handcuffs"; (4) that the State impermissibly used its rebuttal "as a personal attack on defense counsel"; (5) that the trial court erred in failing to grant a judgment of acquittal because the State's evidence "showed that Farrell's use of force was provoked by a sudden event"; and (6) cumulative error. Second Direct Appeal Initial Brief [ECF No. 11-2] at 84–87. On January 12, 2023, the Fourth DCA summarily affirmed the trial court in an unwritten opinion. *See Farrell v. State*, 355 So. 3d 932, 932 (Fla. 4th DCA 2023). Farrell filed a *pro se* "Motion for Rehearing, Rehearing *En Banc*, Clarification, and Request for Written Opinion," *see* Motion for Rehearing [ECF

No. 11-2] at 217–20, which the Fourth DCA summarily denied on February 13, 2023, *see* Order Denying Motion for Rehearing [ECF No. 11-2] at 223.

Farrell filed our § 2254 Petition on February 13, 2024. *See* Declaration of Inmate Filing [ECF No. 1-3] at 1.[4] The State concedes—and we agree—that "the instant petition is timely." Response to Order to Show Cause ("Response") [ECF No. 10] at 6; *see also Day v. McDonough*, 547 U.S. 198, 210 n.11 (2006) ("[S]hould a State intelligently choose to waive a statute of limitations defense, a district court would not be at liberty to disregard that choice.").

## THE LAW

### I.     The Antiterrorism and Effective Death Penalty Act ("AEDPA")

AEDPA instructs district courts to deny any claim that was "adjudicated on the merits" in a state-court proceeding unless that adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Harrington v. Richter*, 562 U.S. 86, 97–98 (2011) (summarizing 28 U.S.C. § 2254(d)–(e)). To have "adjudicated [the claim] on the merits," the state court need not have issued any kind of formal opinion or even outlined its reasoning. *Id.* at 99 ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary."). Rather, when a state court doesn't articulate its reasons for the denial, the federal court must "'look through' the unexplained decision to the last related state-court decision that does provide a rationale" and "then presume that the

---

[4] "Under the 'prison mailbox rule,' a *pro se* prisoner's court filing is deemed filed on the date it is delivered to prison authorities for mailing." *Williams v. McNeil*, 557 F.3d 1287, 1290 n.2 (11th Cir. 2009). "Absent evidence to the contrary, [courts] assume that a prisoner delivered a filing to prison authorities on the date that he signed it." *Jeffries v. United States*, 748 F.3d 1310, 1314 (11th Cir. 2014).

unexplained decision adopted the same reasoning." *Wilson v. Sellers*, 584 U.S. 122, 125 (2018). "Clearly established Federal law" means "the holdings, as opposed to the dicta, of [the United States Supreme Court's] decisions as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000). To be "contrary to clearly established federal law, the state court must either (1) apply a rule that contradicts the governing law set forth by Supreme Court case law, or (2) reach a different result from the Supreme Court when faced with materially indistinguishable facts." *Ward v. Hall*, 592 F.3d 1144, 1155 (11th Cir. 2010) (cleaned up).

For "a state court's application of [Supreme Court] precedent" to be "'unreasonable, the state court's decision must have been more than incorrect or erroneous. The state court's application must have been objectively unreasonable." *Wiggins v. Smith*, 539 U.S. 510, 520–21 (2003) (cleaned up). "[I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by [the Supreme] Court." *Richter*, 562 U.S. at 101. "And an unreasonable application of those holdings must be objectively unreasonable, not merely wrong; even clear error will not suffice. To satisfy this high bar, a habeas petitioner is required to show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Woods v. Donald*, 575 U.S. 312, 316 (2015) (cleaned up).

Section 2254(d) similarly prohibits federal judges from reevaluating a state court's factual findings unless those findings were "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). To establish that a state court's factual findings were unreasonable, "the petitioner must rebut 'the presumption of correctness [of a state court's factual findings] by clear and convincing evidence.'" *Ward*, 592 F.3d at 1155–56 (quoting 28 U.S.C. § 2254(e)(1)). "[E]ven if a petitioner successfully carries his burden under §

2254(e)(1)—showing by clear and convincing evidence that a particular state-court factual determination was wrong—he does not necessarily meet his burden under § 2254(d)(2): Even if the state court made a clearly erroneous factual determination, that doesn't necessarily mean the state court's 'decision' was 'based on' an 'unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Pye v. Warden, Ga. Diagnostic Prison*, 50 F.4th 1025, 1035 (11th Cir. 2022) (en banc) (quoting 28 U.S.C. § 2254(d)(2)). Indeed, habeas relief is not warranted "even if some of the state court's individual factual findings were erroneous—so long as the decision, taken as a whole, doesn't constitute an unreasonable determination of the facts and isn't based on any such determination." *Ibid.* (cleaned up).

"AEDPA's standard is intentionally difficult to meet." *Woods*, 575 U.S. at 315 (cleaned up). When reviewing state criminal convictions on collateral review, "federal judges are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong. Federal habeas review thus exists as a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Id.* at 316 (cleaned up).

Even if a petitioner meets AEDPA's "difficult" standard, he must still show that any constitutional error had a "substantial and injurious effect or influence" on the verdict. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993). The *Brecht* harmless-error standard requires habeas petitioners to prove that they suffered "actual prejudice." *Mansfield v. Sec'y, Dep't of Corr.*, 679 F.3d 1301, 1307 (11th Cir. 2012). As the Supreme Court recently explained, while the passage of AEDPA "announced certain new conditions to [habeas] relief," it didn't eliminate *Brecht*'s actual-prejudice requirement. *Brown v. Davenport*, 596 U.S. 118, 134 (2022). In other words, a habeas petitioner must satisfy *Brecht*, even if AEDPA applies. *See id.* at 1526 ("[O]ur equitable precedents remain applicable 'whether or not' AEDPA applies." (citing *Fry v. Pliler*, 551 U.S. 112, 121 (2007)). In short, a "federal court must

8

*deny* relief to a state habeas petitioner who fails to satisfy either [*Brecht*] or AEDPA. But to *grant* relief, a court must find that the petition has cleared both tests." *Id.* at 1524 (emphasis in original); *see also Mansfield*, 679 F.3d at 1307 ("[A] habeas petition cannot be successful unless it satisfies both [AEDPA] and *Brecht*.").

### II. AEDPA's Procedural Requirements

"[A] person in custody pursuant to the judgment of a State court" has one year to file a habeas petition in federal court. 28 U.S.C. § 2244(d)(1). That one-year period "runs from the latest of" the following dates:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1)(A)–(D). But this limitations defense is waivable. *See Paez v. Sec'y, Fla. Dep't of Corr.*, 947 F.3d 649, 655 (11th Cir. 2020) (explaining that the State may express its intent to "waive the limitations bar").

Beyond meeting this one-year window, though, federal habeas petitioners must also *exhaust* their claims by "*properly* present[ing] [them] to the state courts." *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999) (emphasis in original). Specifically, federal habeas petitioners must "fairly present every issue raised in [their] federal petition to the state's highest court, either on direct appeal or on collateral review." *Mason v. Allen*, 605 F.3d 1114, 1119 (11th Cir. 2010) (cleaned up). "If a petitioner fail[ed] to

9

'properly' present his claim to the state court—by exhausting his claim[ ] and complying with the applicable state procedure—prior to bringing his federal habeas claim, then [§ 2254] typically bars [courts] from reviewing the claim." *Ibid.* In other words, where a petitioner has not "*properly* presented his claims to the state courts," the petitioner will have "procedurally defaulted his claims" in federal court. *O'Sullivan*, 526 U.S. at 848.

There are, to be sure, two exceptions to the general rule that a federal court may not consider a procedurally defaulted claim on the merits: "cause and prejudice" and "actual innocence." *Dretke v. Haley*, 541 U.S. 386, 393 (2004) ("[A] federal court will not entertain a procedurally defaulted constitutional claim in a petition for habeas corpus absent a showing of cause and prejudice to excuse the default. We have recognized a narrow exception to the general rule when the habeas applicant can demonstrate that the alleged constitutional error has resulted in the conviction of one who is actually innocent of the underlying offense."). A habeas petitioner can establish "cause and prejudice" if (1) "some objective factor external to the defense impeded the effort to raise the claim properly in the state court," and (2) "there is at least a reasonable probability that the result of the proceeding would have been different." *Harris v. Comm'r, Ala. Dep't of Corr.*, 874 F.3d 682, 688 (11th Cir. 2017). "Actual innocence," on the other hand, "applies to a severely confined category: cases in which new evidence shows 'it is more likely than not that no reasonable juror would have convicted the petitioner.'" *McQuiggin v. Perkins*, 569 U.S. 383, 395 (2013) (quoting *Schlup v. Delo*, 513 U.S. 298, 329 (1995)). The petitioner bears the burden of establishing that one of these exceptions to the procedural-default rule applies. *See Gordon v. Nagle*, 2 F.3d 385, 388 (11th Cir. 1993) ("A defendant has the burden of establishing cause and prejudice."); *Arthur v. Allen*, 452 F.3d 1234, 1245 (11th Cir. 2006) ("The petitioner must support the actual innocence claim with new reliable evidence[.]" (cleaned up)).

All that said, "[s]tates can waive procedural bar defenses in federal habeas proceedings, including exhaustion." *Vazquez v. Sec'y, Fla. Dep't of Corr.*, 827 F.3d 964, 966 (11th Cir. 2016) (cleaned

up)). But "[a] State shall not be deemed to have waived the exhaustion requirement . . . unless the State, through counsel, *expressly* waives the requirement." 28 U.S.C. § 2254(b)(3) (emphasis added); *see also McNair v. Campbell*, 416 F.3d 1291, 1304 (11th Cir. 2005) (same).

**ANALYSIS**

In his Petition, Farrell advances three arguments—all attacking the state trial court's decision to deny him immunity under Florida's Stand Your Ground law. In Ground One, Farrell says that the Fourth DCA erroneously denied his petition for a writ of certiorari and his petition for a writ of prohibition because he was "entitled to an immunity hearing based on the new procedural standard that change[d] [the] law and applies to all Stand Your Ground immunity hearing[s] conducted on or after the Statute's effective date." Petition at 4; *see also* Memorandum of Law ("Memo") [ECF No. 1-1] at 5 ("Thus, petitioner could now request a new pre-trial Motion to Dismiss claiming 'Stand Your Ground' as the elements procedurally had shifted the burden from him to the State."). Ground Two is mainly duplicative of Ground One—adding only a claim that Farrell's due-process rights were violated because he was entitled to a new immunity hearing, at which "[h]e did not have to testify in his defense[.]" Petition at 5. Finally, in Ground Three, Farrell argues that the state court's decision to hold a new trial without a second immunity hearing "placed [him] in jeopardy for a second time[.]" *Id.* at 6.

The State says that all three of Farrell's grounds for relief are unexhausted—either because they were "not raised in State court" or because "the federal nature of the claim was not presented to the state court for adjudication[.]" Response at 8–9. Recognizing, however, that the exhaustion inquiry is a close call in the circumstances of this case, we'll "skip over" the State's procedural defenses and deny the Petition on its merits. *See Loggins v. Thomas*, 654 F.3d 1204, 1215 (11th Cir. 2011) ("When relief is due to be denied even if claims are not procedurally barred, we can skip over the procedural bar issues, and we have done so in the past."). In doing so, we'll highlight two obvious problems with

11

Farrell's claims. *One*, the Petition (especially in Grounds One and Two) mainly concerns itself with state-law errors, which cannot be remedied on federal habeas review. *Two*, to the extent Farrell manages (in Grounds Two and Three) to advance cognizable federal constitutional claims, those claims are meritless. We'll address each problem in turn.

## I. The Stand Your Ground Issues Cannot be Relitigated on Habeas Review

We'll start with Farrell's view—underlying Grounds One and Two—that he was entitled to a new immunity hearing after the Florida legislature changed the relevant burden of proof. The state trial court held a Stand Your Ground hearing over a three-day period between February 10, 2017, and April 28, 2017. *See* Order Denying Stand Your Ground Motion [ECF No. 11-1] at 39. It's undisputed that, when those hearings took place, "the defendant b[ore] the burden of proof, by a preponderance of the evidence, to demonstrate entitlement to Stand Your Ground immunity at the pretrial evidentiary hearing." *Bretherick v. State*, 170 So. 3d 766, 775 (Fla. 2015). Before the state trial court could rule on Farrell's Stand Your Ground claim, however, the Florida legislature amended FLA. STAT. § 776.032 and changed the burden of proof. Effective June 9, 2017, "once a prima facie claim of self-defense immunity from criminal prosecution has been raised by the defendant at a pretrial immunity hearing, the burden of proof *by clear and convincing evidence* is on the party *seeking to overcome the immunity* from criminal prosecution[.]" 2017 FLA. LAWS Ch. 2017-72 (emphases added) (codified at FLA. STAT. § 776.032(4)). So, whereas before June 9, 2017, a Florida criminal defendant had to prove his right to Stand Your Ground immunity by a preponderance of the evidence, after June 9, 2017, the State now bears the burden to establish, by clear and convincing evidence, that the defendant *is not* entitled to immunity.

Farrell thus argues that he was entitled to a new immunity hearing because the burden of proof in Stand Your Ground cases changed while his case was pending. *See* Memo at 5 ("Petitioner['s case] was reversed and remanded for a new trial on May 29, 2019. Thus, petitioner could now request a new

pre-trial motion to dismissing claiming 'Stand Your Ground' as the elements procedurally had shifted the burden from him to the State."); Petition for Writ of Certiorari [ECF No. 11-1] at 266 ("As Farrell's case was reversed on appeal, a new Stand Your Ground hearing is required by law[.]"). The Fourth DCA rejected this argument, holding that, under the Florida Supreme Court's decision in *Love*, Farrell's original immunity hearing "was conducted before the effective date of the amendment" and that the legislature did not intend "to undo pre-effective date immunity hearings." Order Denying Petition for Writ of Certiorari [ECF No. 11-1] at 273 (quoting *Love*, 286 So. 3d at 188).

In *Love*, the Florida Supreme Court held that FLA. STAT. § 776.032(4) was a "procedural change in the law and applied to all Stand Your Ground immunity hearings conducted *on or after* the statute's effective date." 286 So. 3d at 190 (emphasis added). The high court also *explicitly rejected* the notion that a criminal defendant should be entitled to a new immunity hearing just because his original hearing relied on the old burden of proof. *See id.* at 188 ("[The Second DCA] correctly concluded that section 776.032(4) is procedural but then seemingly gave the statute a true retroactive application, by ordering a new immunity hearing for a defendant convicted prior to the statute's effective date. The caselaw does not support such a default application of a procedural statute. And the legislation itself is devoid of any suggestion that the Legislature intended section 776.032(4) to undo pre-effective-date immunity hearings."). In other words, the Florida Supreme Court (the ultimate arbiter of Florida law) held that the new burden of proof set out in FLA. STAT. § 776.032(4) only applies to Stand Your Ground immunity hearings conducted *on or after* June 9, 2017. *See id.* at 180 ("Here, the relevant event is the immunity hearing, and section 776.032(4) applies to those immunity hearings taking place on or after the statute's effective date."). And (crucially) the Supreme Court of Florida found that the statute *did not retroactively invalidate* immunity hearings (like Farrell's) that occurred *before* June 9, 2017. *See ibid.* ("Because there is no indication the Legislature intended the statute to undo pre-effective-date immunity hearings, we disapprove [the Second DCA's] decision to order a new immunity hearing in

13

that case." (cleaned up)); *see also Bailey v. State*, 333 So. 3d 761, 765 (Fla. 3d DCA 2022) ("In several *Love* progeny decisions, our sister courts have similarly held that defendants in nonfinal cases are not entitled to new immunity hearings based upon the intervening statutory change."); *Catalano v. State*, 298 So. 3d 689, 690 (Fla. 2d DCA 2020) ("On remand, we now conclude that Catalano is not entitled to a new immunity hearing because his [original] immunity hearing occurred before the amended statute's effective date."). Since Farrell's original immunity hearing concluded before June 9, 2017 (the effective date of the amendment), the Fourth DCA applied this unambiguous body of state law and held that Farrell wasn't entitled to a new immunity hearing. *See* Order Denying Petition for Writ of Certiorari [ECF No. 11-1] at 273.

And we cannot second-guess the state court's interpretation and application of state law because "it is not the province of a federal habeas court to reexamine state-court determinations of state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991); *see also McCullough v. Singletary*, 967 F.2d 530, 535 (11th Cir. 1992) ("A state's interpretation of its own laws or rules provides no basis for federal habeas corpus relief, since no question of a constitutional nature is involved."). This principle disposes of most of Farrell's Petition because we cannot (and will not) review the state court's holding that Farrell wasn't entitled to a second Stand Your Ground immunity hearing. *See McGhee v. Sec'y, Dep't of Corr.*, 2019 WL 3388232, at *12 (M.D. Fla. July 26, 2019) (Covington, J.) ("Whether McGhee qualified for immunity from prosecution under Florida's 'Stand Your Ground' law is a question of state law. Accordingly, McGhee's claim is not cognizable in this federal habeas proceeding." (cleaned up)). So, to the extent Grounds One and Two contend that Farrell was "deprive[d of] . . . a right by statute to have a [second] 'Stand Your Ground' immunity hearing," Memo at 6, those claims are **DENIED**.

## II. Farrell's Constitutional Claims are Meritless

Of course, we can still review a state court's alleged errors if they involve "issues of constitutional dimension[.]" *Carrizales v. Wainwright*, 699 F.2d 1053, 1055 (11th Cir. 1983). As far as we can tell, Farrell raises two "issues of a constitutional dimension" in his Petition. *First*, in Ground Two, Farrell says that his due-process rights were violated because he was entitled to a new immunity hearing where "[h]e did not have to testify in his defense as the State now [had] the burden of proof by clear and convincing evidence[.]" Memo at 5. *Second*, in Ground Three, Farrell claims that his second trial violated the Double Jeopardy Clause of the Fifth Amendment because the state trial court "failed to grant the petitioner a Stand Your Ground immunity hearing for his new trial." *Id.* at 8. Both arguments fail.

*First*, Farrell contends that he was forced to testify during his original immunity hearing and that principles of due process required the state trial court to hold a second immunity hearing at which he could have remained silent. *See* Memo at 5–6. This argument is specious. If Farrell hadn't testified at the Stand Your Ground immunity hearing, the State would have presented *unrebutted* physical and witness testimony showing that it was unreasonable for him to use deadly force. So, for instance, as they did at the original Stand Your Ground hearing, the State would have shown that: (1) the victim "did not own a gun"; (2) the victim frequently smoked flakka but "did not get crazy or irrational from smoking flak[k]a"; (3) "the levels of flak[k]a [in the victim's system] were so low . . . at the time of his death" that a toxicology report "would not even report the presence of it"; (4) the victim had never threatened Farrell; and (5) several of the gunshots Farrell fired hit "the victim's back and back of the head" and "some appear[ed] to have been fired while the victim was on the ground." Order Denying Stand Your Ground Motion [ECF No. 11-1] at 45–47. This evidence obviously meets the "clear and convincing evidence" standard since it shows that it was "highly probable" that Farrell didn't act in self-defense. *Nejad v. Att'y Gen., State of Ga.*, 830 F.3d 1280, 1289 (11th Cir. 2016). And, without

15

Farrell's testimony at the immunity hearing, Farrell would have had no way of rebutting this evidence or of even presenting his Stand Your Ground defense.

And we know precisely what would have happened if Farrell *hadn't* testified at the Stand Your Ground Hearing because the trial jury found him guilty of second-degree murder *beyond a reasonable doubt*—which is a higher standard than "clear and convincing evidence." *See* Second Trial Verdict [ECF No. 11-1] at 275. Farrell's due-process rights thus *couldn't* have been violated because a petit jury found that the State had met a higher burden of proof than it would've had to meet at the Stand Your Ground hearing. *See Boston v. State*, 326 So. 3d 673, 677 (Fla. 2021) ("As applied here, the First District properly concluded that the trial court's failure to require the State to overcome Boston's immunity claim with clear and convincing evidence was cured when the State overcame Boston's self-defense claim by meeting the heavier trial burden of proof beyond a reasonable doubt." (cleaned up)); *see also Brecht*, 507 U.S. at 637 ("The test [for actual prejudice on habeas review] . . . is whether the error had substantial and injurious effect or influence in determining the jury's verdict." (cleaned up)). Since requiring the state court to hold a second Stand Your Ground hearing—at which Farrell would have had the right to remain silent—wouldn't change the outcome of Farrell's case, we **DENY** Ground Two.[5]

---

[5] In his Reply, Farrell advances the bizarre argument that "judicial estoppel" required the state trial court to hold "a new [S]tand [Y]our [G]round hearing." Reply Brief ("Reply") [ECF No. 14] at 4. In saying so, Farrell contends that, during his direct appeal, both the Fourth DCA and the State *admitted* that "Petitioner reasonably believed it was necessary [to] use deadly force to prevent death or great bodily harm[.]" *Id.* at 5. But that's not true. For one thing, in the portion of the State's appellate brief Farrell relies on, the State conceded that Farrell "had no duty to retreat." Direct Appeal Answer Brief [ECF No. 11-1] at 166. But whether Farrell had a duty to retreat is completely irrelevant here because, under Florida law, his use of deadly force wasn't justified unless he *reasonably believed* that "he was in danger of imminent death or great bodily harm" when he shot the victim. *Id.* at 161. For another, the Fourth DCA *didn't* find that Farrell reasonably used deadly force. It merely held that Nicole Bazini's testimony "was relevant to show that [Farrell's] apprehension of the victim was reasonable" and that the trial court erred in excluding potentially relevant testimony. *Farrell*, 273 So. 3d at 48. If the Fourth DCA truly believed that Farrell had acted in self-defense, it would not have remanded his case back to the trial court for a new trial. It would have required the trial court to dismiss the indictment.

*Second*, Farrell has failed to explain how his second trial violated the Constitution's prohibition against double jeopardy. The Fourth DCA reversed Farrell's first conviction after concluding that the state trial court erroneously excluded evidence of the victim's prior bad act, which "was relevant to corroborate the defendant's testimony that the violent incident occurred." *Farrell*, 273 So. 3d at 48. The U.S. Supreme Court has held that, "[w]hen a conviction is obtained in a proceeding marred by harmful trial error . . . . [T]he appropriate remedy for prejudicial trial error, in almost all circumstances, is simply the award of a retrial, not a judgment barring reprosecution." *Smith v. United States*, 599 U.S. 236, 241–42 (2023).[6] Since the Fourth DCA reversed and remanded for a new trial based on trial-court error, Farrell could be retried again without violating the Double Jeopardy Clause. *See Justices of Boston Mun. Ct. v. Lydon*, 466 U.S. 294, 308 (1984) ("The Double Jeopardy Clause is not an absolute bar to successive trials. The general rule is that the Clause does not bar reprosecution of a defendant whose conviction is overturned on appeal."); *United States v. Bobo*, 419 F.3d 1264, 1268 (11th Cir. 2005) ("Double jeopardy concerns are not implicated unless there has been some jeopardy-terminating event, such as an acquittal."). Farrell's claim that the failure "to grant the petitioner a Stand Your Ground immunity hearing for his new trial" somehow caused jeopardy to attach, Petition at 6,[7] thus has no basis in law. We therefore **DENY** Ground Three.

### EVIDENTIARY HEARING

We won't hold an evidentiary hearing in this case. "[W]hen the state-court record 'precludes

---

[6] The Supreme Court has "recognized one exception to this rule: violations of the Speedy Trial Clause, which we have described as 'generically different' from 'any' other criminal right in the Constitution." *Id.* at 242 (quoting *Barker v. Wingo*, 407 U.S. 514, 519 (1972)). Since this case has nothing to do with Farrell's speedy-trial rights, we needn't address this exception.

[7] For this position, Farrell cites only one case—the First DCA's opinion in *Quintana v. State*, 452 So. 2d 98 (Fla. 1st DCA 1984). *See* Memo at 8. But *Quintana* has nothing to do with double jeopardy. It simply held that a trial court "should not bar the introduction of evidence of the victim's reputation for violence or of his prior specific acts of violence, if such evidence will explain or otherwise give meaning, significance, or point to, the conduct of the deceased at the time of the killing." 452 So. 2d at 101 (cleaned up). In fact, *Quintana* is one of the cases the Fourth DCA relied on when it ordered *a new trial* in Farrell's case. *See Farrell*, 273 So. 3d at 47 (citing *Quintana*, 452 So. 2d at 100).

habeas relief' under the limitations of § 2254(d), a district court is 'not required to hold an evidentiary hearing.'" *Cullen v. Pinholster*, 563 U.S. 170, 183 (2011) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007)). Based on what we've said—including and especially the presence of a robust trial and state-postconviction record—we don't think we'd benefit from any further factual development here.

### CERTIFICATE OF APPEALABILITY

A Certificate of Appealability ("COA") is appropriate only when the movant makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To deserve a COA, therefore, the movant must show that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). "Where a district court has disposed of claims . . . on procedural grounds, a COA will be granted only if the court concludes that 'jurists of reason' would find it debatable both 'whether the petition states a valid claim of the denial of a constitutional right' and 'whether the district court was correct in its procedural ruling.'" *Eagle v. Linahan*, 279 F.3d 926, 935 (11th Cir. 2001) (quoting *Franklin v. Hightower*, 215 F.3d 1196, 1199 (11th Cir. 2000)). Reasonable jurists wouldn't debate our assessment of Farrell's constitutional claims, so we'll **DENY** any request for a COA.

\*   \*   \*

Having carefully reviewed the record and the governing law, we hereby **ORDER AND ADJUDGE** that the Petition [ECF No. 1] is **DENIED**, that a COA is **DENIED**, that any request for an evidentiary hearing is **DENIED**, that all deadlines are **TERMINATED**, and that any pending motions are **DENIED** as moot. The Clerk shall **CLOSE** this case.

**DONE AND ORDERED** in the Southern District of Florida on April 25, 2024.

_____
**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc: counsel of record
Herman Farrell, *pro se*